UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| JUDITH A O'CONNOR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 12-cv-40106-TSH** |
| ROBERT SPAIN, Individually and as Town Manager | ) | |
| for the Town of Millbury, Massachusetts | ) | |
| Defendants. | ) | |

_____)

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
### August 31, 2012

**Hillman, D.J.**

This matter comes before the court on the *Plaintiff's Motion for Preliminary Injunction* (Docket No. 3) under Fed. R. Civ. P. 65. The court heard argument on the plaintiff's motion on August 29, 2012. Counsel for both parties attended the hearing.

The plaintiff filed suit under 42 U.S.C.A. § 1983 contending her rights to due process and free speech were violated when the defendant suspended her employment for fifteen (15) days without pay. The plaintiff is currently serving her suspension and now seeks a preliminary injunction enjoining (1) her suspension, and (2) the defendant from interfering with her ability to perform her position as the Executive Director of the Council on Aging for the Town of Millbury.[1] For the following reasons, the plaintiff's motion is **denied**.

---

[1] The court is disappointed that the defendant pursued the suspension of the plaintiff immediately after rendering the town's decision on August 21st. After taking more than four months to investigate the allegations involving the plaintiff, the defendant could have waited to invoke the suspension until after the court's decision on the plaintiff's motion for preliminary injunction. It is obvious from both counsels' submissions that they have been engaged in an ongoing dialogue which contemplated injunctive relief. The court scheduled the hearing on this motion within three days of the filing of the complaint in order to accommodate both parties' interests in the mistaken belief that the suspension was tolled pending the outcome of the hearing.

**Facts[2]**

The plaintiff, Judith O'Connor ("O'Connor") has been employed full-time as the Executive Director of the Council of Aging for the Town of Millbury for the past thirty-two (32) years.  Defendant Robert Spain ("Spain") is the Town Manager for the Town of Millbury.  On or about April 23, 2012, Spain sent O'Connor notice that she was being placed on administrative leave with pay effective immediately "pending an investigation into allegations of possible misconduct."  The next day, O'Connor received a notice that the Chief of Police of Millbury had been employed to conduct an investigation into the allegations.  The Chief interviewed O'Connor and other residents and crafted a *Confidential Summary Memorandum* based on his findings.

On August 13, 2012, Spain notified O'Connor that he had scheduled an informal hearing for August 20, 2012 pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985), to consider whether O'Connor should be suspended from employment for a period of fifteen (15) days.  The notice set forth facts which Spain claimed showed the plaintiff violated either the town's Employee Handbook or the Massachusetts General Laws.  In response, on August 17, 2012, counsel for O'Connor wrote to town counsel setting forth O'Connor's position relative to the issues raised in the investigation and further indicated O'Connor should not receive a *Loudermill* hearing because she was not a town employee covered by the civil service law, Mass. Gen. Laws ch. 31; instead he requested a public hearing.[3]

Spain conducted O'Connor's hearing on August 20, 2012, and the town presented its position in support of a fifteen (15) day suspension based, in part, on a redacted version of the

---

[2]      Unless otherwise indicated, facts are taken from the plaintiff's' Verified Complaint (Docket No. 1).

[3]      Pursuant to the town charter, the appointing authority could not suspend or remove O'Connor from office without compensation without first finding "good cause" for such action.  Charter, § 7-8 (Docket No. 1-6).

*Confidential Summary Memorandum* which included hearsay testimony of unidentified witnesses.  Counsel for O'Connor submitted a statement on her behalf;[4] but did not have the benefit of discovery or cross examination of any of the witnesses.

The next day, Spain sent O'Connor his decision to suspend her for "fifteen (15) days effective immediately;" informing her that the "Town of Millbury will provide [her] with an appellate structure" with "an independent hearing officer to conduct an appeal trial hearing" regarding Spain's decision.  The decision did not identify the procedure that would govern said appeal.  O'Connor is now serving her suspension.

### Analysis

The plaintiff would be entitled to a preliminary injunction if she could show:  (1) a likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of hardships in her favor; and (4) the effect (if any) of the court's ruling on the public interest.  *Ross-Simons I of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996).  To satisfy the first prong, the plaintiff must demonstrate that she is likely to succeed in showing the defendant violated her constitutional right to due process by suspending her without pay after engaging in a *Loudermill* summary hearing.[5]  In this case, the town's charter is silent as to how to determine whether good cause exists to suspend an employee such as O'Connor.  The defendant asked the Police Chief to investigate the allegations.  Thereafter, the defendant implemented a two stage process whereby the plaintiff was given a *Loudermill* hearing before her proposed suspension, with the opportunity to have a second "appeal trial hearing" in front of

---

[4]     The court takes this fact from the August 21, 2012 decision attached to the Verified Complaint (Docket No. 1-12).

[5]     The plaintiff also claims a violation of her rights to freedom of speech (Count II of the Verified Complaint). Because the injunction sought does not stem from this claim, the court will not address Count II in its analysis.

an independent hearing officer if she was not satisfied with the results of the *Loudermill*

hearing.[6]

The Supreme Court has explained the critical importance attached to the requirement that

a procedural due process claimant allege the unavailability of constitutionally adequate remedies

under state law. As it stated in *Zinermon v. Burch,* 494 U.S. 113, 125–126, 110 S.Ct. 975, 983

(1990):

> In procedural due process claims, the deprivation by state action of a constitutionally
> protected interest in "life, liberty, or property" is not in itself unconstitutional; what is
> unconstitutional is the deprivation of such interest *without due process of law* ... The
> constitutional violation actionable under § 1983 is not complete when the deprivation
> occurs; it is not complete unless and until the State fails to provide due process.
> Therefore, to determine whether a constitutional violation has occurred, it is necessary to
> ask what process the State provided, and whether it was constitutionally adequate.

(emphasis in the original) (citations omitted).

Due process requires the employee to be heard "at a meaningful time and in a meaningful

manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965).  At the pre-

termination stage, due process requires that the tenured public employee receive oral or written

notice of the charges against her, an explanation of the employer's evidence, and an opportunity

to present her side of the story.  *See Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532,

546, 105 S.Ct. 1487, 1495 (1985);[7] *Jackson v. Norman,* 264 Fed. Appx. 17, 19 (1st Cir. 2008);

*Rios-Montoya v. Puerto Rico,* 2011 WL 3322556 (D.P.R. Aug. 2, 2011).  The *Loudermill* Court

noted that "something less" than a full evidentiary hearing would be considered sufficient due

---

[6]     The defendant's counsel represented to this court at the August 29, 2012 hearing that the town will afford
the plaintiff an appellate hearing, conducted by an independent third party, which will include the right to confront
and examine witnesses and present evidence on her own behalf.

[7]     While the plaintiff has argued *Loudermill* is in applicable because it concerned employees covered by civil
service protection unlike the plaintiff who is not so covered; the application of the Court's holding in that case has
consistently been applied far beyond the civil service context. *See e.g.*, *Chmielinski v. Mass.*, 513 F.3d 309, 316 (1st
Cir. 2008); *Conward v. Cambridge School Comm.*, 171 F.3d 12, 23-24 (1st Cir. 1999); *Brasslett v. Cota*, 761 F.2d
827, 836 (1st Cir. 1985).

process before an adverse administrative action would happen.  *Loudermill,* 470 U.S. at 545-46, 105 S.Ct. at 1495.

To determine what process is constitutionally due, courts have generally balanced three distinct factors:  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest."  *Gilbert v. Homar*, 520 U.S. 924, 931-32, 117 S. Ct. 1807, 1812 (1997) quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).  *See also*, *Federal Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 242, 108 S.Ct. 1780,1788-1789; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157 (1982).  The three factors weigh against the plaintiff's claims regarding due process.

The pre-suspension process afforded O'Connor, while not successful in achieving the result she desired, was constitutionally sufficient. She received notice of the grounds upon which suspension was contemplated and an opportunity to submit a response directed to those grounds. Her counsel submitted evidence and briefed the issue.  Nothing in current Supreme Court case law suggests that a more elaborate pre-suspension process is constitutionally necessary.  *See generally, Brock v. Roadway Express, Inc.,* 481 U.S. 252, 107 S.Ct. 1740 (1987); *United States v. Charles George Trucking Co.,* 823 F.2d 685, 692 (1st Cir.1987); *Doe v. Bowen*, 682 F. Supp. 637, 643 (D. Mass. 1987).  To require the town to provide any greater level of procedural due process at the pre-discipline stage would unnecessarily intrude on the town's interest in temporarily removing an unsatisfactory employee and in efficiently administering its personnel system.  *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495.  It therefore appears that the plaintiff is not likely to succeed on her due process claims, and an injunction is not warranted.

It should be noted that in doing a balance of harms analysis, the plaintiff falls short as well.  To justify court intervention in the form of an injunction *before* any post-suspension hearing happens, O'Connor argues she has a significant privacy interest in the uninterrupted receipt of her paycheck. While opinions have recognized the severity of depriving someone of the means of her livelihood, see, *e.g., Mallen,* 486 U.S. at 243, 108 S.Ct. at 1789; *Loudermill,* 470 U.S., at 543, 105 S.Ct., at 1493-1494; they have also emphasized that in determining what process is due, account must be taken of "the *length*" and "*finality* of the deprivation," *Logan,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157 (emphasis added).  Unlike the employee in *Loudermill,* who faced *termination,* O'Connor faces only a *temporary suspension*.  So long as the suspended employee receives a sufficiently prompt post-suspension hearing, the lost income is relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are likely often not affected at all.  *See*, *Gilbert v. Homar*, 520 U.S. 924, 932, 117 S. Ct. 1807, 1813 (1997).  Moreover, the plaintiff has been offered an "appellate trial hearing" conducted by an independent decision maker before whom plaintiff will presumably request back pay and the removal of any disciplinary records.  The balance of harms weighs against the plaintiff.

### Conclusion

Ultimately, "a preliminary injunction is a potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests," *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004), and no such circumstances exist here.  Plaintiff's motion for a preliminary injunction (Docket No. 3) is therefore **DENIED**.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
U.S. DISTRICT JUDGE