UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JUDITH O'CONNOR ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | NO. 12-40106-TSH |
| ROBERT SPAIN, individually and as Town ) | |
| Manager for the Town of Millbury, ) | |
| Massachusetts, ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 62)

**February 5, 2015**

Plaintiff Judith O'Connor ("Plaintiff"), Director of the Council on Aging for the Town of Millbury, asserts claims against Defendant Robert Spain ("Defendant"), the Millbury Town Manager, in his individual and official capacities. Plaintiff alleges that Defendant deprived her of rights to freedom of speech and due process secured by the First and Fourteenth Amendments of the U.S. Constitution, and seeks damages under 42 U.S.C. § 1983. Plaintiff also requests that the Court enter declaratory judgment setting forth her rights under the Massachusetts conflict of interest statute, M.G.L. c. 268A § 23(b)(2)(ii). Defendant has moved for summary judgment. For the reasons set forth below, Defendant's motion for summary judgment is ***granted in part*** and ***denied in part***.

## Background

This case arises out of Defendant's decision to suspend Plaintiff for comments she made at work about candidates for the Millbury Board of Selectmen and Board of Health prior to a

1

town election in April 2012. Plaintiff is employed by the Town of Millbury as the Executive Director of the Council on Aging. Defendant is the Town Manager. Pursuant to the town charter, the town manager has the authority to suspend or remove town employees for good cause.

Municipal elections for the Town of Millbury were scheduled to take place on Tuesday, April 24, 2012. One of the services that the Council on Aging provides to seniors is to give rides to the polls on election day. While at work on April 20, Plaintiff went into the dining room at the Senior Center just before lunch and made statements to seniors about the upcoming election. The substance and context of those comments are disputed. Deborah Dymek, a senior who was present in the dining room at the time, recalls the following:

> [Plaintiff] came into the dining area, said that there was voting on Tuesday, and that Franny King is running for selectman. "Now, Franny is a friend of the Senior Center, and he is the person that donates money for the summer concerts, so he is a friend of the Senior Center. . . . [Selectman Candidate Sandy Cristo and his wife] are not friends of the Senior Center. [Board of Health Candidate] Bill Wilkinson is a friend of the Senior Center . . . ."

Dymek Dep. 43:4-13. Dymek was upset and intimidated by the comments because she felt that Plaintiff was telling the seniors how to vote. Dymek Dep. 46:11-18; Spain Dep. 89:17-22.

Mary Clark, an employee of Elder Services of Worcester who helped serve lunch to seniors that day, says that Plaintiff made an "announcement" that "Tuesday was a very important day, and that she would provide transportation to the poles [sic], and she couldn't tell people who to vote for, but she could tell people who was friends of the Millbury Senior Center." Clark Dep. 52:23-53:6. According to Clark:

> [Plaintiff] said . . . "I don't usually tell you who to vote for, but in this case I will." That's when she said: "I don't tell you who to vote for, but I can tell you [candidate] Franny King has been a friend of the seniors and [candidate Sandy Cristo and his wife] have not."

2

Clark Dep. 58:18-59:4. Plaintiff maintains that she did not make an announcement. Instead, she says that she entered the dining room only to get a cup of coffee when multiple people began asking her questions about the election. O'Connor Dep. 294:2-13, 136:11-19. She made clear that she could not tell anyone how to vote. *Id.* at 121:22-122:5. In response, someone asked "well, can you tell who is good for the Senior Center?" *Id.* at 122:9-10. Emphasizing again that she could not tell people how to vote, Plaintiff expressed her opinion that Mr. King had been a friend to the Senior Center, but that the Cristos had not been friends to the Senior Center. *Id.* at 122:11-123:2. As she was leaving, Plaintiff reminded the seniors that free rides to the polls were available on election day, and encouraged them to vote. *Id.* at 137:11-16. The encounter lasted only three to four minutes. *Id.* at 138:3-6. Plaintiff maintains that the conversation would never have occurred if she had not been asked questions about the election by those in the dining room. *Id.* at 137:6-8.

That same day, Defendant received several complaints about Plaintiff's comments. Joseph Coggans, Jr., a former Millbury selectman, called Defendant after hearing from Dymek that she was upset about what Plaintiff had said. Coggans Dep. 21:13-18. Armand White, a candidate for the Millbury Board of Health, also called Defendant after he was told by "several people" that Plaintiff had told seniors to vote for his opponent, Bill Wilkinson. White Dep. 37:21-38:4. Dymek herself went to Defendant's office to complain. Defendant was not there at the time, so his secretary scheduled a meeting with her for the following Monday, April 23. Over the weekend, Defendant received an anonymous voicemail message from the daughter of a senior who had felt intimidated by Plaintiff's comments. Spain Dep. 146:5-19.

At the April 23 meeting with Defendant, Dymek shared her account. She told Defendant that Plaintiff had made an announcement to the seniors in the dining room that the elections were

3

upcoming, encouraged them to vote, and explained who did and did not support the Senior Center. Spain Dep. 88:7-89:22. Dymek told Defendant that she felt she was being told who to vote for. *Id.* at 89:21-22. Taking the complaint seriously, Defendant appointed Chief of Police Mark Moore to investigate and placed Plaintiff on administrative leave "pending an investigation into allegations of possible misconduct regarding voting in connection with the Town municipal elections." Spain Dep. 164:19-24; Notice of Administrative Leave, Docket No. 64, Ex. G. Following three months of investigation, Chief Moore submitted a report to Defendant. Among other factual findings, the report concluded that while at work, Plaintiff had made statements to seniors expressing her opinion about what candidates supported the Senior Center. *See* Confidential Summary Memorandum, Docket No. 64, Ex. E, at 38.

Based on Chief Moore's report, Defendant decided to conduct a *Loudermill* hearing to determine whether Plaintiff should be suspended. The hearing took place before Defendant on August 20, 2012. The allegations against Plaintiff included multiple violations of the employee handbook and Massachusetts law, including the Massachusetts conflict-of-interest statute. As discussed in greater detail below, § 23(b)(2)(ii) of the conflict-of-interest statute prohibits municipal employees from using their official position "to secure unwarranted privileges" not available to others. *See* M.G.L. 268A § 23(b)(2)(ii). On August 21, 2012, Defendant issued a written decision in which he found that Plaintiff "used Town time and property to promote a candidate and influence the outcome of the Town elections in violation of Town policy and Massachusetts law." *See* Loudermill Hearing Decision, Docket No. 64, Ex. M, at 2. As a result, Defendant suspended Plaintiff for a period of fifteen days without pay.[1]

---

[1] On August 24, Plaintiff filed the instant complaint and requested a preliminary injunction to enjoin her suspension on due process grounds. This Court denied the preliminary injunction, finding that the pre-suspension process provided to Plaintiff was constitutionally sufficient. *See* Docket No. 21.

4

Plaintiff appealed the Town's decision, and Attorney Edward Doocey was appointed hearing officer for the appeal. Doocey held three days of evidentiary hearings, received 26 exhibits and heard oral testimony from Plaintiff, Defendant, and nine additional witnesses. On July 9, 2013, Doocey issued a 22-page decision in which he found that the town's employee handbook was not enforceable against Plaintiff, and that M.G.L. c. 55 § 14 did not apply to Plaintiff's conduct because she had not engaged in fundraising activities.[2] However, Doocey found that Plaintiff had engaged in conduct that violated M.G.L. § 23(b)(2)(ii), thereby providing Defendant with good cause to discipline her. *See* Doocey Appeal Decision, Docket No. 64, Ex. Q, at 22. Notwithstanding that finding, Doocey reduced Plaintiff's suspension to five days and directed the town to reimburse her for lost compensation and benefits that exceeded the five-day suspension.

Plaintiff filed her amended complaint with this Court on December 12, 2013. The complaint asserts claims against Defendant in his individual and official capacities under 42 U.S.C. § 1983 for violation of her constitutional rights to due process (Count I) and freedom of speech (Count II). The complaint also asserts a state law claim seeking declaratory relief that sets forth Plaintiff's rights under the Massachusetts conflict-of-interest law (Count III). Defendant has moved for summary judgment. In response, Plaintiff has waived Count I, but opposes summary judgment with respect to Counts II and III.

---

[2] Section 14 of M.G.L. c. 55 provides that "[n]o person shall in any building . . . occupied for state, county or municipal purposes demand, solicit or receive any payment or gift of money or other thing of value for the purposes" of a political campaign. M.G.L. c. 55 § 14.

## Discussion

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that a district court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1968). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *See Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex*, 477 U.S. at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002).

*Count II: First Amendment Claim*

Plaintiff's First Amendment claim under § 1983 fails to survive summary judgment because, as explained below, Defendant is entitled to qualified immunity and there is no evidence that the Town of Millbury has a custom or policy of suspending employees for speech protected by the First Amendment.

*§ 1983 Claim Against Spain in Individual Capacity*

Plaintiff seeks damages against Defendant in his individual capacity under 42 U.S.C. § 1983, asserting that her speech was protected and therefore her suspension violated the First Amendment. To be sure, "citizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, — U.S. —, —, 134 S.Ct. 2369, 2374 (2014). In the First Circuit, courts use a three-part inquiry to determine whether an adverse employment action against a public employee violates the employee's free speech rights. *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011). First, a court must determine "whether the employee spoke as a citizen on a matter of public concern." *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007) (internal quotations omitted). Second, the court balances "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 44 (alteration in original). Third, the employee must "show that the protected expression was a substantial or motivating factor in the adverse employment decision." *Id.* at 45.

Even assuming a constitutional violation, however, Defendant is entitled to qualified immunity and therefore the Court will enter summary judgment on Count II.[3] Qualified

---

[3] Viewing the record in the light most favorable to Plaintiff, there may well be a genuine factual dispute material to the question of whether a First Amendment violation occurred. If the factfinder were to credit Plaintiff's story—that she was merely offering a personal opinion in response to questions on her way to get coffee—there is a colorable argument that she was not making statements pursuant to her official duties, and thus would be speaking as a private

7

immunity provides public officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. Al-Kidd*, 563 U.S. —,—, 131 S.Ct. 2074 (2011). To overcome a public official's qualified immunity defense in a § 1983 suit, a plaintiff must show that the violation of her constitutional right was "clearly established" at the time of the violation. *Decotiis*, 635 F.3d at 36. In the First Circuit this analysis involves two inquiries: (1) whether the legal contours of the right were sufficiently clear that a reasonable official would understand that his conduct violates the right; and (2) whether in the specific context of the case, the violation would have been clear to a reasonable official. *Id.* "The salient question is whether the state of the law at the time gave a defendant 'clear notice that what he was doing was unconstitutional.'" *Diaz-Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011). A right is clearly established "only if *every* reasonable official would have understood that what he is doing violates that right." *Id.* at 50-51 (internal quotations omitted).

With these principles in mind, this Court finds that a reasonable official in Defendant's position could have believed that suspending Plaintiff for her comments did not violate her constitutional rights. The legal contours of the First Amendment rights of a public employee are, for better or worse, inherently murky. In *Decotiis*, for example, the First Circuit observed that the cases governing whether public employees speak as private citizens "reveal the muddiness of this area of the law," and concluded that it was not clearly established that Plaintiff's criticism of her employer was protected speech. *Decotiis*, 635 F.3d at 37. Plaintiff does not cite a single case that would have put Defendant on notice that suspending Plaintiff for her election-related

---

citizen under the *Garcetti* test. *See Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951 (2006). Further, Plaintiff was speaking on a matter of public concern, as discussion of an upcoming election can be "fairly considered as relating to [a] matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S. Ct. 1684 (1983). There is also no question that Plaintiff fulfills the third step of the First Amendment violation inquiry, as Defendant suspended her because of her comments. However, the Court refrains from a full analysis of the alleged First Amendment violation because Defendant is entitled to qualified immunity.

8

comments violated the First Amendment, and this Court is aware of none. The boundary between speaking as a private citizen and a public employee has not been drawn with such certainty that it clearly protects Plaintiff's right to endorse municipal election candidates while at work.

This conclusion gains further support in the context of this specific case. Defendant was told by multiple individuals that Plaintiff had expressed her support for certain candidates by making an announcement in the dining room at the Senior Center during work hours. *See, e.g.*, Coggans Dep. 21:13-18; White Dep. 37:21-38:4; Spain Dep. 146:5-19. At least one senior told Defendant that she felt Plaintiff was telling the seniors how to vote. *See* Spain Dep. 89:21-22. In an effort to be thorough and deliberate in his response, Defendant appointed the Chief of Police to investigate the complaints. The investigator concluded that Plaintiff did in fact make statements in support of certain candidates while on the job, and that the majority of those present believed Plaintiff was trying to influence their votes. *See* Confidential Summary Memorandum, Docket No. 64, Ex. E, at 38.

A reasonable town manager could conclude from the available information that Plaintiff's speech was not protected because she was not speaking as a private citizen, and because the town has a significant interest in preventing its employees from using their official positions to endorse candidates in municipal elections. Indeed, this result is all but compelled by the totality-of-the-circumstances and interest-balancing nature of the First Amendment test for public employees. When the existence of a constitutional right in a particular context is determined by a balancing test, "the right can rarely be considered 'clearly established'" because it will almost always be "difficult, if not impossible, for officials to know when they have violated" that right. *Frazier v. Bailey*, 957 F.2d 920, 931 (1st Cir. 1992). *See also Stickley v. Sutherly*, 416 Fed. App'x. 268 (4th Cir. 2011) (observing that "the nuanced and careful

approach" required by the First Amendment test for public employees "lead[s] to the conclusion that an employee's right to speech in any particular situation will often not be immediately evident").

When a "legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." *Singer v. State of Me.*, 49 F.3d 837, 845 (1st Cir. 1995). Such a question exists here. Because a reasonable town manager could conclude that suspending Plaintiff would not violate her free speech rights, Defendant is entitled to qualified immunity. Therefore, no material fact dispute exists that would preclude summary judgment on Plaintiff's § 1983 claim against Defendant in his individual capacity.

*§ 1983 Claim Against Spain in Official Capacity*

Plaintiff also seeks damages against Defendant in his official capacity. A claim against a town official in his official capacity is "merely a claim against the Town." *Doe v. Bradshaw*, 2013 WL 5236110, CV No. 11-11593-DPW at *4 n.4 (D. Mass Sept. 16, 2013). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989) (observing that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). In order to succeed under a theory of municipal liability under § 1983, Plaintiff must show that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978). In other words, the municipal action "must constitute a 'policy or custom' attributable" to the Town of Millbury. *Young v. City of Providence*, 404 F.3d 4, 26 (1st Cir. 2005).

Plaintiff's complaint does not allege that the Town of Millbury had a policy or custom of suspending town employees for speech protected by the First Amendment. Further, there is no evidence in the record suggesting that the town had such a policy or custom. The record pertains solely to Defendant's handling of the single incident with Plaintiff. Accordingly, there is no genuine issue of material fact regarding Plaintiff's municipal liability claim and judgment will enter as a matter of law on Count II.

*Count III: Declaratory Judgment*

*Whether the Court Should Exercise Supplemental Jurisdiction*

Count III is a state law claim for declaratory relief brought under M.G.L. c. 231A, which allows Massachusetts courts to "make binding declarations of right, duty, status and other legal relations . . . in any case in which an actual controversy has arisen," under "the common law, or a charter, statute, municipal ordinance or by-law . . . " M.G.L. c. 231A §§ 1-2. Before proceeding to the merits of the claim, however, the Court must assess whether to exercise supplemental jurisdiction now that the foundational § 1983 claims are dismissed.

The supplemental jurisdiction statute allows district courts to decline to exercise supplemental jurisdiction over a state law claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). District courts are afforded broad discretion in making decisions regarding supplemental jurisdiction, and must examine the totality of the circumstances in exercising that discretion. *See Chungchi Che v. MBTA*, 342 F.3d 31, 37 (1st Cir. 2003). Appropriate factors for the court to consider include "comity, judicial economy, convenience, and fairness." *Id.* The First Circuit has stated that comity with state courts is a particularly important concern, and "the balance of competing factors ordinarily will weigh

11

strongly in favor of declining jurisdiction over state law claims where foundational claims have been dismissed." *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998).

This Court has profound respect for the role of the Massachusetts courts in determining questions of state law. Nonetheless, judicial economy, convenience, and fairness weigh in favor of exercising supplemental jurisdiction. Both Plaintiff and Defendant remain in their respective positions with the Town of Millbury. Plaintiff claims she is afraid to speak about local politics at work for fear of violating the conflict-of-interest law, *see* O'Connor Dep. 106:22-107:5, and alleges that the suspension for conduct she maintains is lawful affects her ability to perform her job. Further, over two years after this action was commenced, the parties have finally completed fact discovery and are ready to proceed to trial. Given these circumstances, I find that resolving this case in this Court is preferable to forcing the parties to start over in the state system or live with the existing uncertainty.

*M.G.L. c. 268A § 23(b)(2)(ii)*

Plaintiff requests that the Court enter declaratory judgment finding that her conduct did not violate the Massachusetts conflict-of-interest law and setting aside the decision of Attorney Doocey. The Massachusetts Legislature originally enacted the conflict-of-interest law in 1962, as part of an effort to "strike at corruption in public office, inequality of treatment of citizens and the use of public office for private gain." *Everett Town Taxi, Inc. v. Bd. of Aldermen of Everett*, 266 Mass. 534, 536, 320 N.E.2d 896 (1974). Section 23 sets forth standards of conduct for municipal officers and employees.[4] The relevant provision in this case is M.G.L. c. 268A § 23(b)(2)(ii), which states:

---

[4] Where a municipal employee is found to have violated § 23, "appropriate administrative action as is warranted may be taken by the . . . head of . . . [the] municipal agency." § 23(e).

> No current officer or employee of a state, county or municipal agency shall knowingly, or with reason to know . . . use or attempt to use such official position to secure for such officer, employee or others unwarranted privileges or exemptions which are of substantial value and which are not properly available to similarly situated individuals.

M.G.L. c. 268A § 23(b)(2)(ii). The courts of Massachusetts have not provided guidance on the scope of § 23(b)(2)(ii). However, the state ethics commission has issued an advisory interpreting § 23(b)(2)(ii) to prohibit certain political activity by public employees.[5] *See* State Ethics Commission Advisory 11-1: Public Employee Activity, Docket No. 63, Ex. 1. The advisory explains that, "[i]n general," § 23(b)(2)(ii) "prohibits the use of one's public position to engage in political activity, because a public employee who does so is using his official position to secure for himself or others (such as a candidate or a ballot question committee) unwarranted privileges of substantial value that are not properly available to similarly situated persons." Advisory 11-1, Docket No. 63, Ex. 1 at 4. Section 2 of the advisory sets forth what public employees may not do. Subject to two limited exceptions,[6] the "general rule" is that a public employee:

> "**may not** engage in political activity . . . on his public work time; while acting in his official capacity or while in his official uniform; in a public building . . . ; or with use of other public resources, such as staff time, public office space and facilities, public office equipment . . . , or public office supplies."

*Id*. The advisory subsequently states: "[a] public employee who engages in such political activity, *unless the activity is of truly minimal duration or significance (such as wearing a*

---

[5] Section 23(f) of the conflict-of-interest law delegates authority to the state ethics commission to promulgate regulations establishing exclusions or exemptions under the law. M.G.L. c. 268A § 23(f). Those regulations are codified at 930 Mass.Code Regs. 5.01-6.27 However, the regulations do not expressly interpret § 23(b)(2)(ii) or its application to political activity. Thus, it appears that the only available guidance on the effect of 23(b)(2)(ii) in this case is Advisory 11-1.

[6] The first exception is for public employees holding policy-making positions. Policy-making employees are granted more leeway to make statements about ballot questions. The second exception is for elected officials. *See* Advisory 11-1, Docket No. 63, Ex. 1 at 4. However, neither exception applies to the facts of this case because Plaintiff's conduct did not relate to a ballot question, and Plaintiff is not an elected official.

*political campaign button to work in a public office)*, violates the conflict of interest law." *Id.* (emphasis added).

There is a material fact issue about whether Plaintiff's statements were of such minimal duration or significance that the conduct did not violate the conflict-of-interest law. Although there is evidence that Plaintiff made an "announcement" directing seniors how to vote, Plaintiff's version of the story is much different. According to Plaintiff, she only engaged in discussion of the candidates because she was asked questions about the election on her way to get coffee. *See* O'Connor Dep. 137:5-8; 294:7-10. She emphasized repeatedly that she could not tell people how to vote, and the conversation only lasted three to four minutes. *Id.* at 122:11-16. Viewing the record in the light most favorable to Plaintiff, a reasonable factfinder could credit Plaintiff's testimony and conclude that such conduct was less significant than wearing a political campaign button to work.

In response, Defendant urges the Court to ignore the "minimal duration or significance" language because the advisory provides examples of prohibited conduct, including the "use public office staff or equipment to . . . answer campaign questions." *Id.* at 5. Although it is true that Plaintiff answered questions about candidates in the local election, the Court declines to conclude that she answered "campaign questions" within the meaning of the advisory. The language Defendant cites appears within a list of prohibited conduct, all of which envision an employee who uses public resources *on behalf of* a political campaign.[7] The import of the paragraph is to prohibit public employees from acting as an agent of a campaign while at work—conduct which presumably would always carry more than minimal significance. Defendant asserts only that Plaintiff expressed her preferences about certain candidates, not that she was

---

[7] The full paragraph provides that public employees may not "use public office staff or equipment to do any of the following: conduct campaign research, write campaign or political speeches, conduct campaign polls, answer campaign questions, or create or maintain voter or supporter databases or campaign websites or links." *Id.* at 5.

14

working as spokesperson for, or was otherwise affiliated with, a campaign. Thus, the Court finds that the "answer campaign questions" language is not dispositive.

Because a reasonable juror could conclude that Plaintiff's conduct was of minimal duration or significance, a genuine factual dispute exists that is material to whether Plaintiff violated M.G.L. c. 268A § 23(b)(2)(ii), and summary judgment is precluded.

## **Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket No. 62) is ***granted in part*** and ***denied in part***. Summary judgment is ***granted*** on Count II. Summary judgment is ***denied*** on Count III.

SO ORDERED.

>	*/s/ Timothy S. Hillman*
>	**TIMOTHY S. HILLMAN**
>	**DISTRICT JUDGE**